IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| JANE DOE | ) |
|     and | ) CIVIL CASE NO: |
| JANE ROE | ) JUDGE: |
|     Plaintiffs, | ) |
|     v. | ) **JURY TRIAL DEMANDED** |
| MIAMI UNIVERSITY | ) |
|     Defendant. | ) |

**COMPLAINT AND JURY DEMAND**

Plaintiffs, Jane Doe ("Doe") and Jane Roe ("Roe"), file this Complaint against Defendant, Miami University ("Miami" or "the University"), and in support thereof allege as follows:

## I. NATURE OF THE ACTION [1]

1. This action arises from Miami's breach of contractual obligations and promises, which has resulted in erroneous findings of responsibility and sanctions against Plaintiffs after they were found to be in violation of the Student Code of Conduct pertaining to Endangering Health or Safety and Failure to Comply.

---

[1] With the filing of this Complaint, Plaintiffs are also filing a Motion to Proceed Under Pseudonym for themselves and other students involved in the underlying disciplinary proceeding (referred either by a Jane Doe, Jane Roe, or in the case of other students, by their initials). Defendant knows the identity of the students and is not prejudiced in any way, should this Honorable Court grant the Motion.

2. Plaintiffs were suspended due to being "present for and/or [having] knowledge of the mass gathering" and for failing to comply with the City of Oxford's Mass Gathering Ordinance ("the Ordinance").

3. In order to be found responsible, for "Endangering Health or Safety" Miami's Code of Conduct requires that a student "take or threaten" action, as opposed to an act of omission.

4. In order to have violated the Ordinance, a person must be found to have "hosted, maintained, or participated" in a gathering involving "greater than ten (10) non-household persons at the same time."

5. Miami sanctioned Plaintiffs for violating the aforementioned policies despite concluding only that Plaintiffs were present and/or had knowledge of the gathering.

6. No evidence was offered by Miami that establishes, by a preponderance of the evidence, that Plaintiffs took any action or threatened to host, maintain or participate in the gathering.

7. Beginning in August of 2020, Plaintiffs were enrolled as juniors, in good standing, at Miami University.

8. Plaintiffs were enrolled in all online only classes at Miami during the Fall 2020 semester due to the COVID-19 pandemic.

9. Plaintiffs paid tuition to Miami in exchange for the education to be provided by Miami and to enjoy the rights and privileges afforded to students in good standing.

10. During their two prior years at Miami University, Plaintiffs devoted themselves to their studies, had no prior misconduct history with Miami, and were on track to graduate in May of 2022.

11. In August of 2020, Plaintiffs moved from their respective homes back to the Miami community, residing at an off-campus house, addressed as 116 E. Church Street, in Oxford, Ohio, along with eight other students. This residence is not owned nor maintained by Miami.

12. During the afternoon of August 22, 2020, Plaintiffs were inside 116 E. Church Street when an Oxford Police Officer ("the Officer") approached seven (7) male students who were standing outside at the premises. Plaintiffs did not invite the male students, host the gathering, nor participate in the gathering. No evidence has been provided to contradict these facts.

13. The Police Officer advised the men that he was going to issue a Civil Offense Citation for noise restriction, pursuant to a City of Oxford ordinance.

14. The Officer advised that he needed a resident of the house to accept the citation.

15. One of the males entered the house to locate one of the residents to come speak to the Officer.

16. Roe came out of the house to speak to the Officer.

17. Upon learning that the Officer was intending to issue a noise citation, Roe advised that she did not want a citation in her name because she had not been outside and was in her bedroom in the house.

18. The Officer advised Roe that the ticket would be in her name, but that the citation was not going to "go on [her] record." The Officer did not advise that receipt of the citation would lead to further legal issues or disciplinary issues from the home. He then told Roe to go back into her residence to obtain another resident who would accept the citation.

19. One of the male students offered to accept responsibility for the noise violation, however the Officer advised that it had to be one of the residents.

20. After Roe went into the home, the Officer advised the men, who are not residents of the home, about Oxford's policy regarding mass gatherings.

21. Roe returned from the residence with Doe.

22. Doe, unaware of the collateral consequences of doing so, accepted the ticket. The Officer advised Doe that she can "just pay the ticket" and that the violation would not be part of her criminal history.

23. On or about September 8, 2020, Miami sent a Procedural Review Notice to multiple students that were alleged to reside at 116 E. Church Street, naming them as Respondents to a report dated August 22, 2020 and listing violations of Endangering Health or Safety and Failure to Comply, despite providing no other information as to their specific role in the alleged conduct. (*See Exhibits A and B*.)

24. Attached to the Procedural Review Notice was a copy of the noise citation, with the incorrect address listed, a Report Addendum, and an excerpt from Miami's statement regarding Mass Gatherings and House Parties. *Id.*

25. On or about September 23, 2020, Miami sent Plaintiffs a Notice of an Administrative Hearing. (*See Exhibits C and D*.)

26. Administrative hearings were held for the ten (10) alleged residents of 116 E. Church Street over the course of three separate days; September 30, 2020, October 1, 2020, and October 2, 2020. During these hearings, there was no evidence presented to establish that either Plaintiff had hosted the gathering, invited the male students, or had participated in the gathering.

27. On October 5, 2020, Plaintiffs received Administrative Hearing Follow Up Letters, advising each Plaintiff that she was found to be "Responsible" for violation of Endangering Health

or Safety and Failure to Comply based primarily on still shots obtained from a body worn camera video taken by the Officer. (*See Exhibits E and F*.)

28. The still shots of the body camera video numbered each student seen, totaling thirteen (13) students, although not all students, including Plaintiffs, were present at the same time.

29. The hearing officer based his finding of responsibility on a conclusion that "[Plaintiffs] were, at minimum, present for and/or had knowledge of the mass gathering."

30. Miami imposed sanctioned against Plaintiffs in the form of a one-semester suspension, effective August 22, 2020 to December 31, 2020, which was stayed pending the expiration of an appeal period. Plaintiffs remained enrolled in their classes and continued attending online classes.

31. Neither the male students pictured in the body camera footage, nor the other residents of the house were disciplined, as they were either never charged with a violation, or were found not responsible.

32. Despite no evidence that Plaintiff's planned, hosted, organized, attended, or otherwise participated in the gathering, they were found responsible and subjected to discipline.

33. Plaintiffs timely submitted their Appeals to the findings of responsibility and sanctions on October 12, 2020. (*See Exhibits G and H, along with Exhibits to the Appeals*.)

34. On November 3, 2020, Plaintiffs received a letter from the Appeals Board upholding the findings of the administrative hearing officer and the one-semester suspension. (*See Exhibits I and J*.)

35. The charging decision, hearing, and appeal process was conducted in violation of Miami policies and procedures, which resulted in an unjust and unsupported finding of responsibility and the subsequent sanction.

## II. PARTIES

36. Plaintiff Jane Doe is a citizen of the state of Georgia and at all times relevant herein a full-time undergraduate student at Miami University.

37. Plaintiff Jane Roe is a citizen of the state of Michigan and at all times relevant herein a full-time undergraduate student at Miami University.

38. Defendant, Miami University, is a public, state university as defined in Ohio Revised Code 3345.011 and is located in Oxford, Ohio.

## III. JURISDICTION

39. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because the Plaintiffs and the Defendant are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interests and costs.

40. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim occurred in this district and the Defendant is a resident of the state in which the district is located.

## IV. FACTS

### a. The Gathering at 116 E. Church Street on August 22, 2020.

41. According to the body camera that was obtained by Miami and used as the only evidence at Plaintiffs' disciplinary hearing, the Officer approached 116 E. Church Street due to a purported noise violation.

42. The body camera footage begins as the Officer approaches a group of seven males who are gathered on the porch.

43. Neither Plaintiff is depicted, in the body camera footage, participating in the gathering.

44. Plaintiffs are not seen in the body camera video until they are observed coming out of the house, and only after the Officer advised the men that a resident of the house must come out to receive the ticket.

45. Roe advised the Officer that she had not been outside and that she had been in her room.

46. No evidence has been provided to contradict Roe's assertion.

47. Roe returned to the house to get Doe, after the Officer advised her that someone would need to accept the ticket on behalf of the residents of the house.

48. Doe then came out of the house with Roe and spoke to the Officer.

49. At no point do Plaintiffs make any statement indicating that they hosted the gathering, invited the men to the residence, or had otherwise participated in the gathering.

    **b.    Miami's Response**

50. On or about September 8, 2020, Plaintiffs, and their eight roommates[2], received Miami's Procedural Review Notice, charging them with violations of the Code of Student Conduct by Endangering Health or Safety and Failure to Comply.

51. The students were notified only of the purported violation and provided a copy of the City of Oxford noise violation ticket and an addendum stating: "Noise citation issued and Officer "observed 40+ people on the deck of the house. Most of the people went inside when the officer arrived."

52. Body camera video shows only seven male students on the deck and the Officer was not called as a witness to give a live report during Miami's hearing process regarding what he observed prior to the use of his body camera.

---

[2] Plaintiff's roommates A.S., B.W., D.R., E.L., E.P., I.R. K.D., and N.W., were all charged with violating the same Miami policies and were each found not responsible.

53. Hearings before hearing officer Wesley Highley, a Miami "Title IX investigator," were held on September 30th, October 1st, and October 2nd, with the ten residents of 116 E. Church split among the hearing dates.

54. At Plaintiffs' hearings on October 1st and 2nd, Plaintiffs expressed their desire to decline to answer questions as permitted by Miami Policy, as they understood that their silence could not be construed as an admission to the conduct.

55. Miami, by way of Mr. Highley, produced no evidence, other than the City of Oxford's ticket and the body camera footage from the Officer.

56. No evidence was produced that established that either Plaintiff had invited non-residents to 116 E. Church Street on the afternoon of August 22, 2020.

57. No evidence was produced that established that either Plaintiff had hosted the gathering at 116 E. Church Street on the afternoon of August 22, 2020.

58. No evidence was produced that established that either Plaintiff had participated in the gathering at 116 E. 116 Church Street on the afternoon of August 22, 2020.

59. No evidence was produced that established that either Plaintiff had maintained the gathering at 116 E. 116 Church Street on the afternoon of August 22, 2020.

60. Mr. Highley admitted that he did not have enough evidence to know what had occurred on August 22, 2020 at 116 E. Church Street.

61. No representative from Miami was present at the hearing, other than the Hearing Officer, to represent a Complainant or assist in procedural questions.

62. Because Miami failed to call the Officer to testify, Plaintiffs were unable to ask him any questions, including about his observations that were not captured on the body camera, including but not limited to his observation of the number of people at the residence and when

8

various individuals who are ultimately depicted on the body camera video arrived and/or left the property.

63. On October 5, 2020, Plaintiffs received Miami's Administrative Hearing Follow Up Letters ("the Letter(s)"), which found Plaintiffs responsible for violating Endangering Health or Safety and Failure to Comply.

64. The contents of the Letter sent to each Plaintiff were identical, with the exception of the identifying the student in the heading and introductory greeting.

65. Mr. Highley, who authored the Letters, determined only that:

> A mass gathering of more than ten (10) people is demonstrated by a preponderance of the evidence to have occurred at your residence, at 116 East Church Street. You were, at a minimum, present for and/or had knowledge of a mass gathering. A preponderance of the evidence does exist to indicate that you violated the "Endangering Health or Safety" and "Failure to Comply" policies."

66. Mr. Highley provided "Additional Rationale" for the decision, which was attached to the Letters, and identified the body camera footage as the only source of evidence obtained in the disciplinary process.

67. The "Additional Rationale" identified a total of "thirteen unique individuals, [Plaintiffs] included, [who were] readily observed as being present and intermingling with each other without wearing facial coverings…"

68. Still photos taken from the body camera footage were used to number and identify the thirteen individuals, although none of the photographs depict thirteen people at any given time.

69. Mr. Highley concluded that "because these thirteen (13) individuals were likely all gathered at the same place (116 E. Church) at the same time and they do not all reside at the same housing unit or dwelling, this gathering is clearly in violation of the Oxford City Counsel Mass Gathering Ordinance, which became effective on August 18, 2020.

70. As a result of Mr. Highley's legal conclusion relative to the Mass Gathering Ordinance ("the Ordinance"), he determined that Plaintiffs were responsible for Failure to Comply.

71. On October 5, 2020, at least one of Plaintiffs' housemates, E.L. was found to be "Not Responsible" because "while it is possible that [E.L.] may have participated in, been present for and/or had knowledge of the mass gathering, a preponderance of the evidence does not exist to indicate that [E.L.]' violated the policies. (*See Exhibit K*.)

72. On October 12, 2020, Plaintiffs timely submitted their Appeal of Mr. Highley's decision.

73. Plaintiffs' Appeals were based on new evidence received, which showed that Mr. Highley's count of people present was inaccurate, as well evidence related to Miami's internal confusion regarding policy interpretation.

74. Plaintiffs' Appeals also raised procedural defects that led to an erroneous and unsubstantiated conclusion as to responsibility.

75. Plaintiffs' Appeals also raised a disproportionate sanction argument.

76. On November 3, 2020, Plaintiffs' Appeals were denied, and they were suspended by Miami.

    c. **Miami University's Code of Student Conduct**

77. Miami's Code of Student Conduct is a contractual document authored by Miami that imposes obligations on both Students and Miami, governs behaviors, and outlines procedures and rights that apply to Miami's undergraduate and graduate students "beginning at summer orientation, during academic terms for which they are enrolled, during breaks between terms, during University holidays and vacation, and during periods of suspension." [3]

---

[3] https://www.miamioh.edu/policy-library/students/student-code-of-conduct/index.html; too cumbersome to attach to Plaintiffs' Complaint but available via website

78. The Code states Miami "expects each student and student organization to follow this Code of Student Conduct."

79. The Code prohibits students from engaging in certain behavior; relevant sections of the Code to this Complaint are Endangering Health or Safety and Failure to Comply.

80. Pursuant to the Code a student is responsible for "Endangering Health or Safety" by "taking or threatening action that endangers the safety, physical or mental health, or life of any person, or creates a reasonable fear of such action." *Id.*

81. "Failure to Comply" is defined by the Code, in relevant part, as "failure to comply with the directions of law enforcement, emergency personnel, or authorized University officials…"

82. The Code imposes a duty on Miami to conduct a "full and fair conduct process for every student." [4]

83. The Code provides that certain "processes apply to those involved in matters being addressed by the conduct process." *Id.*

    i. *Notice*

84. Students are entitled to a written Notice of Complaint, which among other things, advises students that they are "presumed not responsible" for the alleged violation, a statement that the student may be accompanied by an advisor, and a statement that the student may request and inspect evidence. *Id.*

    ii. *Investigations*

85. The Code also sets forth the process by which disciplinary matters are investigated. *Id.*

---

[4] https://www.miamioh.edu/policy-library/students/student-code-of-conduct/procedures.html

11

86. Per the Code, an investigation may be initiated where more information is needed to determine the next steps in the student conduct process. *Id.*

87. As part of the final investigation report, the investigator will make a recommendation regarding how to proceed with the case, including the recommendation that "reasonable cause exists to believe that a violation occurred and the case moves forward to a Procedural Review and then to a Community Standards Board Hearing or an Administrative Hearing." *Id.*

### iii. *Hearings*

88. Hearings, under the Code, are "designed to provide a prompt, fair, and impartial resolution." *Id.*

89. In this case, Miami served as both the complainant and the hearing officer.

90. The respondent is presumed "not responsible" for the alleged conduct until a determination regarding responsibility has been made at the conclusion of the conduct process." *Id.*

91. During the hearing, the parties are permitted to ask questions of any factual witnesses called during the hearing. *Id.*

92. Witnesses must either attend in person or be available by phone or web conference.[5]

93. Witness statements are not permitted. *Id.*

94. On September 11, 2020 (Roe) and September 15, 2020 (Doe) Plaintiffs received letters from the Office of Community Standards providing additional information about the hearing process. (*See Exhibit L and M.*)

---

[5] https://miamioh.edu/student-life/community-standards/policies-and-procedures/hearings/index.html

12

95. This correspondence provides that in some cases, witnesses will be requested by the respondent or the Office of Community Standards, however the witnesses must be "live" and the parties have the right to ask questions of the witnesses. *Id.*

96. Determination of responsibility will be made using the preponderance of the evidence standard of review.

### iv.    Sanctions

97. Miami publishes that the "purpose of sanctions is to help students reflect on their behavior, help remedy harm potentially done in the community, and to reduce the likelihood of future violations.[6]

98. Miami's Office of Community Standards notifies students that "it is reasonable to expect that the severity of a sanction increases in accordance with the severity of the violation." *Id.*

99. At no point has Miami recognized that sanctions are designed or meant to be punitive.

### d.    Miami University's Healthy Together Pledge

100. Due to the uniqueness of COVID-19, Miami developed a Healthy Together Pledge[7], hereafter referred to as "The Pledge," for students to sign that outlined specific commitments by the student and/or expectations from the University regarding their actions in light of this public health crisis. *(See Exhibit N.)*

101. Miami maintains that regardless of whether students have signed the Pledge, it is binding upon students.

---

[6] https://miamioh.edu/student-life/community-standards/policies-and-procedures/sanctions/index.html
[7] https://miamioh.edu/healthy-together/community-pledge/index.html

102. The Pledge serves as a contractual agreement between students and Miami and is more specific than the Code of Conduct as it relates to COVID-19 policies and potential violations.

103. The Pledge requires students to wear a mask in all indoor spaces on campus and outdoors when physical distancing was not possible; practice physical distancing 6-10 feet apart; limit personal indoor gatherings to fewer than 10 people; and not host or attend gatherings where physical distance was not possible.

104. The allegation levied against Plaintiffs did not comport to any of the prohibited scenarios outlined in the Pledge.

105. The Pledge was a required condition for "students who wanted to participate in on-campus activities in any University building, such as face-to-face instruction, dining, and living in residence halls."

106. The Pledge provides, "I acknowledge that if I engage in repeated, non-compliant behaviors to this Pledge, I may be referred to the Office of Community Standards for disciplinary action up to and including suspension or dismissal."[8]

### e. City of Oxford Mass Gathering Ordinance

107. On August 18, 2020, the City of Oxford passed an ordinance relative to mass gatherings in the city.[9]

108. The Ordinance provides, in relevant part:

All individuals within the City of Oxford are prohibited from hosting, maintaining or participating in mass gatherings in accordance with the following:

a. "Mass gatherings" for purposes of this Ordinance, means any social gathering event or convening that brings together greater than ten (10) non-household persons at the same time, to include both indoor and outdoor gatherings.

---

[8] *Id.*
[9] https://cityofoxford.granicus.com/MetaViewer.php?view_id=3&clip_id=1199&meta_id=91960

### f. Miami University's Communications to Students

109. On August 19, 2020, Miami published communication to the university community that referenced the Pledge and mentioned, in one sentence buried in the middle of the document, to limit social gatherings, indoor and outdoor, to ten (10) or fewer people.[10]

110. No mention was made in the August 19, 2020 correspondence of a mass gathering ordinance that had passed in the City of Oxford on August 18, 2020, limiting social gatherings to ten (10) non-residents, yet the City of Oxford's face mask mandate was mentioned.

111. On Friday, August 21, 2020, mere hours before the purported mass gathering at 116 E. Church Street, Miami sent a communication[11] to the university community that mentioned, in a sentence buried in the middle of the correspondence, that the City of Oxford had passed an ordinance related to masks and social gatherings. No communication was provided on how Miami was interpreting or enforcing this new ordinance.

112. On August 27, 2020, five (5) days after the alleged mass gathering, Miami issued the first, direct correspondence[12] that provided that students were not permitted to gather in groups larger than ten (10) indoors or outdoors. That communication informed students for the first time that they could be facing discipline in the form of suspension.

113. The reference to suspension was necessary, as there was no collective understanding of how the disciplinary process would be applied to such violations.

---

[10] https://miamioh.edu/coronavirus/campus-announcements/index.html
[11] Id.
[12] Id.

## COUNT I – BREACH OF CONTRACT

114. Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

115. At all times relevant hereto, a contractual relationship existed between Plaintiffs and Miami.

116. Miami extended an offer to Plaintiffs to provide education to Plaintiffs subject to certain terms and conditions, in exchange for Plaintiffs' enrollment and payment of tuition.

117. Miami imposed contractual duties on itself and Plaintiffs through the Code, Pledge, and COVID-19 related correspondence.

118. Plaintiffs accepted Miami's Code, Pledge, and COVID-19 related correspondence by virtue of paying tuition to Miami and intending to follow the policies, procedures, and parameters as required of them in the documents.

119. Miami is required to act in accordance with its written policies and procedures in investigating and adjudicating reports of alleged violations of student conduct standards and imposing appropriate sanctions.

120. Miami materially breached its express and/or implied agreement(s) with Plaintiffs by failing to comply with its obligations, standards, policies, and procedures in the course of the disciplinary proceedings against Plaintiffs, and by subjecting them to a fundamentally unfair process.

121. Specifically, Miami breached its contractual agreements in at least the following ten (10) ways:

    a. Miami failed to investigate the allegations despite having insufficient information to determine whether a violation had occurred;

    b. Miami failed to conduct a prompt, fair, or impartial hearing;

16

    c. Miami failed to presume that Plaintiffs were not responsible until the conclusion of the disciplinary process;

    d. Miami failed to provide Plaintiffs with an opportunity to ask questions of witnesses and instead improperly relied on documentary evidence such as writings and recordings by the Officer, who did not attend the hearing in person or via remote access;

    e. Miami failed to properly apply the preponderance of the evidence standard of proof;

    f. Miami made factual conclusions that were not supported by the evidence, thus leading to an erroneous outcome;

    g. Miami breached the Pledge by referring the matter to the Student Conduct process despite no prior violations of the pledge;

    h. Miami improperly relied on an erroneous conclusion that Plaintiffs' conduct violated the Ordinance;

    i. Miami's sanction was punitive and inconsistent with its stated purpose of sanctions; and

    j. Miami improperly denied Plaintiffs' Appeals.

122. Plaintiffs fully complied with their contractual obligations to Miami.

123. As a direct, proximate, and foreseeable consequence of Miami's breach of its express and/or implied contractual obligations, Plaintiffs sustained significant damages, including, without limitation, damages for emotional distress, physical distress, damage to reputation, loss of educational opportunities, loss of career opportunities, loss of future career prospects, economic injuries, and other direct and consequential damages.

124. As a result of the foregoing, Plaintiffs are entitled to damages, in excess of Seventy-Five Thousand Dollars ($75,000.00), in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursement.

**COUNT II – DECLARATORY JUDGMENT**

125. Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

126. As set forth in this Complaint, Plaintiffs have a legal tangible interest in requiring Miami to administer its policies in a lawful manner.

127. As set forth in this Complaint, Miami is opposing Plaintiffs' legal tangible interests in party because of Miami's violations of its policies.

128. An actual controversy exists between Plaintiffs and Miami concerning Plaintiffs legal tangible interests.

129. Judicial intervention is required because unless Miami is enjoined, Miami's unlawful acts will cause irreparable harm to Plaintiffs which include, but are not limited to, denying Plaintiffs the benefit of their education at Miami, and damage to Plaintiffs' academic and professional reputation;

**WHEREFORE**, Plaintiffs request Declaratory Judgement that Miami violated Plaintiff's rights under Miami's policies and declare that: (i) the outcome and findings made by Miami be reversed; (ii) Plaintiffs be reinstated as a Miami student in good standing; (iii) Plaintiffs' disciplinary record be expunged and sealed; and (iv) any record of Plaintiffs' suspension from Miami be removed from their educational files.

**COUNT III – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

130. Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

131. Miami acted in bad faith in causing the erroneous discipline of Plaintiffs and/or the disproportionate sanction imposed on Plaintiffs.

132. Miami breached its covenant of good faith and fair dealing implied in their agreement(s) with Plaintiffs.

133. As a direct, proximate, and foreseeable consequence of Miami's breach Plaintiffs sustained significant damages, including, without limitation, damages for emotional distress, physical distress, damage to reputation, loss of educational opportunities, loss of career opportunities, loss of future career prospects, economic injuries, and other direct and consequential damages.

134. As a result of the foregoing, Plaintiffs are entitled to damages, in excess of Seventy-Five Thousand Dollars ($75,000.00), in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursement.

**PRAYER FOR RELIEF**

**WHEREFORE**, for the foregoing reasons, Plaintiffs respectfully request that this Honorable Court:

(a) For actual, special, and compensatory damages in an amount to be determined at trial but in no event, not less than $75,000.00;

(b) For punitive damages to the extent permitted by law;

(c) Order(s) requiring Plaintiff's restatement to Miami;

(d) Order (s) requiring Miami to expunge Plaintiffs' official Miami student files of all information relative to its disciplinary interactions with Plaintiffs;

(e) Judgment for attorneys' fees, pursuant to any applicable statute;

19

(f) Judgment for all other reasonable and customary costs and expense that were incurred in pursuit of this action;

(g) Pre-judgment interest and post judgment interest as any be permitted by law and statute; and/or

(h) Such other and further relief as this court may deem just, proper, equitable, and appropriate.

Respectfully submitted,

/s/ Eric F. Long
ERIC F. LONG (0093197)
Attorney for Plaintiffs
Friedman & Nemecek, L.L.C.
1360 East 9th Street, Suite 650
Cleveland, OH 44114
P: (216) 928-7700
F: (216) 820-4659
E: efl@fanlegal.com

/s/ Leslie A. Albeit
LESLIE ALBEIT (0086377)
Attorney for Plaintiffs
Albeit Weiker, LLP
262 S. 3rd Street
Columbus, Ohio 43215
P: (614) 745-2001
F: (614) 471-5081
E: leslie@awlawohio.com