IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| JANE DOE | ) | |
| | ) | CIVIL CASE NO: |
| and | ) | |
| | ) | |
| JANE ROE, | ) | JUDGE: |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MIAMI UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

Now comes Plaintiffs, Jane Doe and Jane Roe, by and through undersigned counsel, Eric F. Long and Leslie A. Albeit, pursuant to Rule 65(A) and (B) of the Federal Rules of Civil Procedure, and hereby moves for a Temporary Restraining Order and/or a Preliminary Injunction enjoining Defendant, Miami University, from its continued sanctions against Plaintiffs, specifically including their suspensions from Miami University.

The grounds for this motion are set forth in the Memorandum of Law in Support of the instant Motion, which is incorporated herein by reference.  Plaintiffs further rely on their Complaint, which is also incorporated herein by reference.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court grant their Motion for Temporary Restraining Order and/or Preliminary Injunction and issue an Order:

1. Enjoining Defendant, Miami University, from continuing its sanction against Plaintiffs stemming from the University's investigation involving Plaintiffs' alleged violation of the Code of Student Conduct and/or Healthy Together Pledge;

2. Ordering Defendant, Miami University, to reinstate Plaintiffs as students in good standing;

3. Expunge and/or otherwise seal Plaintiffs' disciplinary records from all of their education records; and

4. Represent Plaintiffs' good standing to inquiring third parties.

Respectfully submitted,

/s/ Eric F. Long
ERIC F. LONG (0093197)
Attorney for Plaintiffs
Friedman & Nemecek, L.L.C.
1360 East 9th Street, Suite 650
Cleveland, OH 44114
P: (216) 928-7700
F: (216) 820-4659
E: efl@fanlegal.com

/s/ Leslie A. Albeit
LESLIE ALBEIT (0086377)
Attorney for Plaintiffs
Albeit Weiker, LLP
262 S. 3rd Street
Columbus, Ohio 43215
P: (614) 745-2001
F: (614) 471-5081
E: leslie@awlawohio.com

2

**MEMORANDUM IN SUPPORT**

I. Introduction

On November 9, 2020, Plaintiffs Jane Doe and Jane Roe filed their Complaint for Injunctive and Other Relief relative to Defendant Miami University's ("Miami") decision to suspend them from the University following a lengthy and flawed disciplinary process.[1]

Three (3) separate Administrative Hearings involving the same allegation against ten (10) roommates, including Plaintiffs, were conducted on September 30, 2020, October 1, 2020, and October 2, 2020. The administrative hearings were convened by Miami, without any investigation, to determine whether the students, including Plaintiffs, were in violation of the Code of Student Conduct, specifically under the charges of Endangering Health or Safety and Failure to Comply. The purported violations stem from an interaction between an Oxford Police Officer ("the Officer") and Plaintiffs, after Plaintiffs were summoned from their residence on August 22, 2020 for the sole purpose of speaking with the Officer.

The only evidence presented at Plaintiffs' hearings was body camera footage that shows the Officer arriving to the home to find seven males on the deck. At the time the Officer arrived, Plaintiffs were not outside, and could not be seen on camera. After speaking to the males outside, the Officer notified them that a resident of the house must accept a noise citation. Shortly thereafter, one of the males went inside the house to summon a resident, Roe, to speak to the Officer. Roe, who did not want the citation in her name, retrieved Doe to speak to the Officer. Thus, the sole reason for the Plaintiffs being outside was to accept the citation at the request of the Officer. There is no evidence that either Plaintiff had invited, hosted, or otherwise participated in the gathering that took place at the residence. The hearing officer determined that there were at

---

[1] *See* Plaintiff's Complaint and Jury Demand [Doc. 1], which is incorporated herein by reference.

3

least thirteen (13) individuals present at the residence.  However, that number included Plaintiffs and at least one (1) female neighbor and one (1) male student who came to the scene only after the Officer arrived.

The hearing officer determined that Plaintiffs were responsible for violating Miami's Endangering Health or Safety policy because Plaintiffs "were, at a minimum, present for and/or had knowledge of the mass gathering." The hearing officer further found that Plaintiffs failed to comply with a lawful ordinance banning mass gatherings and that they were therefore responsible for "Failure to Comply." Neither the policy or the Ordinance support such findings.

The hearing officer imposed a one-semester suspension, and Plaintiffs appealed the decision to the University Appeals Board, which was convened on October 20, 2020. On or about November 3, 2020 the Appeals Board determined that there was no procedural defect in the adjudication of the case, that new evidence related to the case would not be considered, and that the sanction imposed was appropriate under the Code of Student Conduct.

At the time of this notification, Plaintiffs were in their third year at Miami and were on track to graduate in May of 2022. Plaintiffs have no prior disciplinary record at Miami. Plaintiff Jane Doe has maintained a GPA of 3.42 and Plaintiff Jane Roe has maintained a GPA of 3.46. Jane Doe has plans to apply to law schools after graduation. Jane Roe is in the ultra-competitive field of marketing, has an internship with a fortune 500 company for the summer of 2021, and hopes to earn a full time job with the same company starting following her anticipated graduation in May 2022.

As set forth herein, Plaintiffs seeks emergency injunctive relief to preserve their enrollment as students in good standing so that the matter *sub judice* can be decided on the merits and they can avoid the irreparable harm associated with a suspension from Miami, which includes a delay

in graduation, potential loss of law school and/or graduate program acceptance, delay and difficulty in entering the workforce, and the consequences of a suspension being permanently noted on their official transcripts. Plaintiffs have a strong likelihood of prevailing on the merits of this case because Miami materially breached the contract and the covenant of good faith and fair dealing.

While the threat of irreparable harm to Plaintiffs is extraordinary, there is no prejudice to Miami should injunctive relief be granted. While Miami claims that Plaintiffs' actions endangered the safety of the campus community at the time of the incident, there are no claims that Plaintiffs pose any lingering or ongoing danger.[2] Additionally, if Plaintiffs were a continual threat to health or safety, Miami had the option under the Code of Student Conduct to suspend or restrict access to campus by Plaintiffs on an interim basis. Plaintiffs were not placed under immediate interim suspension or otherwise restricted from any access to campus or campus resources for over two months following the incident. Additionally, as Plaintiffs can and do attend their classes remotely, they do not pose a threat to Miami's ability to provide a safe educational setting. Therefore, Plaintiffs are entitled to immediate injunctive relief to preserve the status quo while this litigation moves forward.

II. Law and Argument

    *A. Miami should be enjoined from suspending Plaintiffs and/or enforcing its disciplinary sanctions because it materially breached its contract with Plaintiffs.*

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (quoting *Univ. of Texas v. Camenisch*, 451 U.S.

---

[2] *See* Decision of the University Board of Appeals attached to the Complaint, which is incorporated herein by reference.

390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981)). Given this limited purpose, and in light of the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal - and evidence that is less complete - than in a trial on the merits. *Univ. of Texas v. Camenisch,* 451 U.S. 390, 395 (1981). Accordingly, the Plaintiff "is not required to prove his case in full at a preliminary injunction hearing." *Id.*

In the Sixth Circuit, courts must engage in a four-factor analysis to decide whether to grant a preliminary injunction. *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399 (6th Cir. 2017); *Planet Aid v. City of St. Johns*, 782 F.3d 318, 323 (6th Cir. 2015). These four factors include:

> (1) whether the movant has demonstrated a strong likelihood of success on the merits; (2) whether he would suffer irreparable injury without the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether issuing the injunction would serve the public interest.

*Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399 (6th Cir. 2017). See also *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007). These factors are to be considered and balanced. They are not prerequisites that must be met. *See S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017); *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399 (6th Cir. 2017).

While COVID-19 related disciplinary actions may be a matter of first impression for this Honorable Court, a number of other courts have issued preliminary injunctions to students who were suspended from their schools due to alleged violations of their schools' COVID-19 safety guidelines. *See Doe v. Rensselaer Polytechnic Institute*, No. 1:20-cv-01359-BKS-CFH, 2020 U.S. Dist. LEXIS 207946 (N.D.N.Y. Nov. 6, 2020); *Ashley Storino v. New York University*, No.

6

157947/2020 (Sup. Ct. New York County Oct. 15, 2020); *Elnaz Pourasgari v. New York University*, No. 157815/2020 (Sup. Ct. New York County Sept. 25, 2020).

### *i.  Plaintiffs are likely to succeed on the merits because Miami materially breached its contract with Plaintiffs.*

Plaintiffs are likely to success on the merits of the case because Miami suspended them for conduct that, even if true, does not rise to a violation of the local ordinance banning mass gatherings or Miami's Code of Conduct or Healthy Together Pledge. Miami has distorted its own definitions and abandoned its own policies in establishing an overly harsh and punitive response to the COVID-19 pandemic. Miami's policies do not permit for discipline where a person fails to take action or is merely aware of action relative to its Endangering Health or Safety Policy. Rather, to be in violation, a person must "take or threaten action." As previously mentioned, the hearing officer determined that Plaintiffs were responsible for violating the Endangering Health or Safety policy because Plaintiffs "were, at a minimum, present for and/or had knowledge of the mass gathering." Simply having knowledge of a gathering or being present in the general vicinity of said gathering does not amount to an affirmative action of the Plaintiffs. Thus, according to Miami's own policies, Plaintiffs being aware that seven (7) males (or any number of people) were gathered outside of their house does not warrant discipline.

Miami also erred in finding that the thirteen (13) people counted by the hearing officer, which included a neighbor who walked over to see what the Officer was doing there, and a male who was not part of the gathering, constituted a violation of the Ordinance, which prohibits a gathering of more than 10 non-household members. Even if evidence was presented that Plaintiffs had hosted, invited, or participated in the gathering, which it was not, the gathering was not in violation of the Ordinance because there were only nine (9) non-household members present at a time once the female neighbor and male bystander are removed from the equation.

7

As part of a crackdown on the perception of COVID-19 dangers among the Miami community, Miami abandoned its well-established policies relative to the notice, investigation, hearing, and appeals process. The result is an arbitrary and capricious finding that is not supported by evidence, imposes an unduly harsh and inconsistent penalty (many students have received a sanction of probation for similar conduct), and has an irreparable negative impact on Plaintiffs.

Moreover, the finding and sanction is poised to render Plaintiffs' past three months of remote learning and studying wasted, will leave a damaging gap in their educational record, and will impact future educational and employment opportunities, while doing nothing to keep the community safe. All the sanction accomplishes is to remove the students from online classes, with a paid for, but unfinished semester that is non-transferable.

### ii. *Plaintiffs will suffer irreparable injury without the injunction.*

A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction. *Doe v. Rensselaer Polytechnic Institute*, No. 1:20-cv-01359-BKS-CFH, 2020 U.S. Dist. LEXIS 207946 (N.D.N.Y. Nov. 6, 2020), *citing Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009). In *Rensselaer*, plaintiff was suspended from access to campus, including access to online classes and academic related activities. *Id.* The suspension stemmed from a gathering hosted by the plaintiff in his off-campus housing. *Id.* While the number of students in attendance at this gathering was in dispute, the number alleged ranged from 30-75 students. *Id.* When analyzing whether the plaintiff suffered irreparable harm, the court noted that plaintiff's final semester had been disrupted by the emergency suspension and that he was now at risk of being unable to complete his final semester, or having to repeat it. *Id.* The court acknowledged that whether an interruption in coursework is irreparable harm is a close question in which district courts have disagreed. *Id.*

8

For instance, in *Bhandari v. Trustees of Columbia Univ.*, No. 00-cv-1753, 2000 WL 310344, at *5, 2000 U.S. Dist. LEXIS 3720, at *15-16 (S.D.N.Y. Mar. 27, 2000), the court found irreparable harm where the plaintiff was suspended midway through the semester and would lose "the benefit of the work he has already performed the semester." Here, the plaintiff was suspended in March, with the semester ending in May. *Id.* However, in *Doe v. Vassar Coll.,* No. 19-cv-9601 (NSR), 2019 WL 6222918, at *6, 2019 U.S. Dist. LEXIS 203418, at *15 (S.D.N.Y. Nov. 21, 2019), the court found no irreparable harm where plaintiff was suspended for a single semester at the beginning of his senior year.

Due to the close proximity of the end of the semester, Plaintiffs in the matter *sub judice* contend that a denial of the requested injunction will certainly result in irreparable harm, as they will lose the benefit of the substantial amount of work that they have already completed throughout the semester. Plaintiffs have continued to dedicate time and money toward their studies this semester, and Miami waited until only three weeks remained in the semester to impose discipline.

Moreover, plaintiffs have worked hard as students at Miami University for over two years. A suspension will delay Plaintiffs' graduation and substantially delay and/or negatively affect their chances at post-graduation educational and employment opportunities. Not only will Plaintiffs have to explain the suspension/gap in their educational record – at a time where a response to COVID is a highly contentious and hyper-political issue - but they will also graduate outside of the typical hiring and graduate school application cycle. While, in theory, Plaintiffs could recoup economic damages through continued litigation, there is no adequate remedy at law to secure a timely graduation, future schooling or employment and a permanent notation of the suspension on Plaintiffs' transcripts. Furthermore, each Plaintiff has been attending Miami on a significant scholarship. Miami has not made any indication that those funds remain available following

9

Plaintiff's re-enrollment at the university. Thus, even the ability to remain at Miami for the remainder of their college education is called into question, as the scholarships were a deciding factor in selecting Miami. There is no doubt that Plaintiffs face irreparable harm if the University is permitted to continue their suspensions. Accordingly, Plaintiffs respectfully request that this Honorable Court find that they will suffer irreparable harm, and grant the requested injunction.

### iii. *The injunction will not substantially harm others.*

Miami can point to no evidence that the University would suffer any harm as a result of reinstating them as students in good standing. The only conceivable argument that Miami can make is that they have an obligation to ensure the safety of their students and campus. Such an argument is illogical in this case because Plaintiffs have been permitted to continue with classes for over two months following this incident. Plaintiffs could remain off-campus, or even outside of Oxford, Ohio (as other students have been permitted to do) and attend classes remotely for the duration of the last three weeks of the semester. This offer has been rejected by Miami, showing that the sanction is not actually motivated by the safety of the community. Rather, Miami's harsh and illogical sanction can only be seen as a punitive action which requires an extra semester of schooling (with an extra semester's worth of tuition).

In *Doe v. Rensselaer Polytechnic Institute*, the school argued that allowing plaintiff to remain in online classes would make it appear as if the school is not sanctioning students and that violations are permissible and without consequences. While the court in the case was mindful of this argument, the court still found that the balance of hardships weighed in favor of the plaintiff as he would lose the work he had already completed in the semester. *Id.* Further, the court noted that the plaintiff would have minimal connection with the school should he be allowed to remain in online classes. *Id.* Plaintiffs' in the matter *sub judice* find themselves in a similar situation.

10

Without an injunction, Plaintiffs will lose the significant amount of work they have already completed for the semester. Meanwhile, should Plaintiffs be allowed to remain off-campus and complete classes remotely, they will have a minimal physical connection with Miami.

Further, while the Defendant claims that Plaintiffs' actions endangered the safety of the campus community at the time of the incident, there are no claims that Plaintiffs still pose a danger to anyone or that suspension with three weeks remaining in the semester remedies such danger. Finally, Plaintiffs have never faced any other disciplinary or criminal charges that would suggest they pose a risk to anyone or are unable to follow Miami's rules moving forward such that a suspension is warranted. As such, the potential harm to Plaintiffs is enormous and incalculable, while Miami faces no adverse consequences, which favors the granting of injunctive relief.

      **iv.** *Issuing the injunction will serve public interest.*

Public interest always favors the application for relief if the applicant demonstrates both a likelihood of success on the merits and irreparable injury. *AT&T Co. v. Winback & Conserve Program*, 42 F.3d 1421, 1427 n.8 (3rd Cir. 1994).  More significantly, it is axiomatic that the public interest always favors the application of connotational norms and protections. *See Am. Freedom Def. Initiative v. SMART*, 698 F.3d 885, 896 (6th Cir. 2012); *Mnyofu*, 2016 WL 131976, *Left Field Media LLC v. City of Chicago,* 137 F.Supp.3d 1127, 1133 (N.D. Ill., 2015).  Here, the American public has a strong interest in ensuring that its colleges and universities establish policies that are in accordance with fairness, constitutional ideals and norms, and equity.

III.    Conclusion

Due to the Defendant's breach of contract, Plaintiffs have been wrongfully suspended from Miami University, will be prohibited from a timely graduation and face loss of post-graduate schooling options and delayed work force entry.  Plaintiffs have a strong claim against Miami and,

as such, have clearly demonstrated a reasonable likelihood of success on the merits of their claim. Due to the severity of the irreparable harm, particularly when compared to the non-existent impact injunctive relief would have on Miami, Plaintiffs should be granted injunctive relief enjoining Miami from continuing the suspension during the pendency of this litigation.

Such injunctive relief would not only serve to maintain Plaintiffs' status quo from an educational and career prospects standpoint, but will also allow them to challenge the disciplinary process through the judicial system consistent with an overwhelming public interest in ensuring that citizens receive basic due process rights in these situations.

Respectfully submitted,

/s/ Eric F. Long                             /s/ Leslie A. Albeit_____

ERIC F. LONG (0093197)            LESLIE ALBEIT (0086377)
Friedman & Nemecek, L.L.C.        Albeit Weiker, LLP
1360 East 9th Street, Suite 650   262 S. 3rd Street
Cleveland, OH 44114               Columbus, Ohio 43215
P: (216) 928-7700                 P: (614) 745-2001
F: (216) 820-4659                 F: (614) 471-5081
E: efl@fanlegal.com               E: leslie@awlawohio.com